UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DANIEL LEE MOONEY,

        Plaintiff,        Case No. 1:11-cv-187

v.        Honorable Janet T. Neff

PATRICIA CARUSO et al.,

        Defendants.

_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Caruso, McKeon, Palmer, Kipp, McCaulley, Stewart, and Simmons. The Court will serve the complaint on Defendant Sutherland.

**Discussion**

I.  Factual allegations

Plaintiff Daniel Lee Mooney presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Earnest C. Brooks Correctional Facility (LRF), though the actions he complains of occurred while he was housed at the Michigan Reformatory (RMI). Plaintiff sues MDOC former Director Patricia Caruso and current Director Richard McKeon, together with the following RMI employees: Warden Carmen Palmer; Deputy Warden Timothy Kipp; Assistant Deputy Wardens Matthew McCaulley and (unknown) Stewart; Acting Inspector (unknown) Sutherland; and Acting Sergeant (unknown) Simmons.

Plaintiff currently is serving prison terms of 30 to 60 years and life, imposed after he pleaded guilty in 1990 to armed robbery and first-degree criminal sexual conduct. Sometime after he was incarcerated, Plaintiff became a confidential informant in an effort to earn a pardon or commutation of his sentence. He infiltrated gangs and, because of his activities, was made the subject of a death order and a murder contract by the Insane Spanish Cobras and the Chaldean Mafia. Plaintiff alleges that he was transferred to RMI for his safety. He contends, however, that prison gangs and organizations routinely keep tabs on his place of incarceration through the MDOC's OTIS (Offender Tracking Information System) website.

After Plaintiff arrived at RMI, Defendants were not responsive to his attempts to provide information obtained from his confidential-informant role. He alleges that Defendants thereby prevented him from meeting his goals and objectives as an informant. According to the complaint, Plaintiff learned of a planned assault by the Latin Counts on another informant, whom Plaintiff knew as "Big Moe." Plaintiff attempted to contact Defendant Sutherland, but he was

unsuccessful. Big Moe was slashed across the throat before Plaintiff could reach anyone. In July 2010, Plaintiff learned that Nelson Cruz had been targeted by the Insane Spanish Cobras. He approached corrections officer Brown, and he asked Brown to arrange a talk with Defendant Simmons, who was then the Security Threat Group Officer. Plaintiff met with Simmons, told him that Cruz was in danger, and advised him of Plaintiff's past actions as an informant. Simmons told Plaintiff that he would get Cruz transferred, but he did not do so. One week later, Cruz was stabbed in the neck and nearly killed.

Following the incident, Plaintiff sent a letter to Defendant Stewart, complaining about Simmons' failure to act. Stewart talked to Plaintiff and indicated that Simmons had not dealt with the matter correctly. Stewart also expressed interest in working with Plaintiff. Plaintiff agreed to work with Stewart and gave him a murder-for-hire "map" identifying a Chaldean Mafia target. The map purportedly was in the handwriting of Bahaa Kalasho, the Chaldean Mafia "Godfather." (Compl., Page ID##4, 6.) Plaintiff asked Stewart to turn the information over to the state police. Stewart advised Plaintiff that he had a DEA contact who could help Plaintiff obtain his freedom in exchange for cooperation. Stewart promised to get back in touch with Plaintiff, but he never did so.

Plaintiff filed for a pardon or commutation, advising the parole board and governor about his work as a confidential informant, the continuing threat against him, and his loss of contact with his family caused by his need to sever relationships in order to protect his family. He also expressed his frustration with having his information ignored, causing others to be hurt. Plaintiff then learned that an Insane Spanish Cobra member named McGowan was stalking Plaintiff to stab him. Plaintiff told officer Brown about the threat, and Brown "made every attempt to keep [Plaintiff] safe from harm." (Compl., Page ID #6.) Plaintiff also spoke with Defendants McCaulley

and Sutherland, who showed Plaintiff some photos. Defendants acted like they had not previously spoken with Plaintiff. Plaintiff informed Defendants that McGowan was planning to attack Plaintiff, but that McGowan himself was at risk because McGowan was unaware that those he had asked for a weapon were plotting against him. Plaintiff alleges that, by providing information to McCaulley and Sutherland, he was trying to protect McGowan from the other prisoners. Sutherland approached McGowan and asked him if he wanted protection. During his contact with McGowan, Sutherland showed McGowan Plaintiff's picture. McGowan refused protection and began to spread word that Plaintiff had snitched on him. Plaintiff subsequently approached Defendant Kipp, again seeking protection for McGowan because McGowan was targeted for stabbing by the Latin Count Alliance. Kipp refused to intervene. McGowan was knocked out as he left the dining hall. McGowan then was placed in segregation. After McGowan was released from segregation, he renewed his threats against Plaintiff, which led to a gang fight between Latin Counts and the Gangster Disciples on January 19, 2011.

Plaintiff complains that Defendants did not use his information, causing others to be injured or killed. He contends that Defendants' failure to investigate the reported conspiracies constitutes indifference to the risks Plaintiff has taken to be a confidential informant. On January 20, 2011, Plaintiff was transferred to LRF. (Notice of Pl's Change of Address, Page ID#22.)

Plaintiff does not state the relief he seeks, though he purports to sue Defendants in their individual capacities, presumably for damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is "to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271

(1994). The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials," directing that they may not "use excessive physical force against prisoners" and must also "'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner by a third party, the plaintiff must show that prison officials acted with "deliberate indifference" to a substantial risk that the third party would cause the plaintiff serious harm. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). *See Curry v. Scott*, 249 F.3d

493, 506 (6th Cir. 2001). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242-43 (6th Cir.1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.")

Here, Plaintiff's allegations primarily involve Defendants disregard of Plaintiff's information about threats to other inmates. Plaintiff lacks standing to assert the constitutional rights of other prisoners. *Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *1 (6th Cir. Aug. 6, 1992). Moreover, Plaintiff's allegation that Defendants failed to utilize his confidential information, thereby impairing his right of commutation, does not support an Eighth Amendment violation. The Eighth Amendment does not protect a prisoner's ability to provide information that will improve his chances of commutation. Although Plaintiff broadly asserts that his activities as a confidential informant place him at risk and that Defendants have been deliberately indifferent to his safety, he makes no allegation that any Defendant other than Defendant Sutherland ignored a specific risk to Plaintiff or took action that increased his risk of harm. In fact, Plaintiff expressly alleges that he was moved to the Michigan Reformatory to protect his safety and that corrections officer Brown did his best to ensure Plaintiff's safety. Shortly after the January 19, 2011 gang fight, Plaintiff was moved to another facility, ostensibly for his safety. Plaintiff does not allege that he requested and was denied protection. Other than his allegation that Sutherland jeopardized Plaintiff by showing McGowan Plaintiff's picture, Plaintiff makes no factual allegation that would support a conclusion that any Defendant acted or failed to act in a way that exposed Plaintiff to additional risk.

Further, Plaintiff makes no allegations about Defendants Caruso, McKeon, and Palmer, other than his claim that they failed to conduct an investigation in response to his complaints and grievances. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior" or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). "The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act." *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004); *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899. Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendants Caruso, McKeon or Palmer engaged in any active unconstitutional behavior.

For all these reasons, Plaintiff fails to state a claim against Defendants Caruso, McKeon, Palmer, Kipp, McCaulley, Stewart, and Simmons. The Court concludes that Plaintiff has sufficiently alleged an Eighth Amendment claim against Defendant Sutherland.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Caruso, McKeon, Palmer, Kipp, McCaulley, Stewart, and Simmons will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and

1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendant Sutherland.

An Order consistent with this Opinion will be entered.


Dated:  April 15, 2011           /s/ Janet T. Neff
                                 Janet T. Neff
                                 United States District Judge