UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DANIEL MOONEY,

        Plaintiff,                         Hon. Janet T. Neff

v.                                        Case No. 1:11-CV-187

PATRICIA CARUSO, et al.,

        Defendants.

_____/


**REPORT AND RECOMMENDATION**

     This matter is before the Court on Defendant Sutherland's Motion for Summary Judgment. (Dkt. #13). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **granted** and this matter terminated.


**BACKGROUND**

     Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Earnest C. Brooks Correctional Facility (LRF). The conduct giving rise to this action occurred while Plaintiff was housed at the Michigan Reformatory (RMI). In 1990, Plaintiff pleaded guilty to armed robbery, for which he received a life sentence, and first degree criminal sexual conduct, for which he is serving an additional sentence of 30 to 60 years.

     The following allegations are contained in Plaintiff's complaint. (Dkt. #1). On some unspecified date following his incarceration, Plaintiff became a confidential informant in an effort to earn a pardon or commutation of his sentence. As a result of his confidential informant activities a

prison gang ordered that Plaintiff be killed. Plaintiff was subsequently transferred to RMI for his safety. After Plaintiff arrived at RMI, however, prison officials were not responsive to Plaintiff's attempts to provide information obtained as a confidential informant.

Plaintiff later learned that a prison gang member named McGowan was planning to stab him. Plaintiff informed several prison officials about the threat, including Defendants Brown, McCaulley, and Sutherland. Plaintiff informed these officials that while McGowan was planning to attack him, McGowan was also in danger because "those he asked a weapon from, were now actually plotting on him." Plaintiff relayed this information to prison officials because he "was trying to save [McGowan] from a lot of hurt."

Defendant Sutherland subsequently spoke with McGowan. Sutherland showed McGowan a photograph of Plaintiff and asked McGowen "if he had a problem with" Plaintiff. Sutherland also asked McGowan "if he wanted protection." McGowan refused the offer of protection and began telling other prisoners that Plaintiff "snitched on him." Defendant Kipp knew that McGowan would be attacked, but indicated that he "don't care." McGowan was later assaulted which constituted for Plaintiff "the final straw with trusting. . .anyone within the Department of Corrections with [his] life after all that [he] have put into trying to keep a safer environment." According to Plaintiff, Defendants' failure to cooperate with him and utilize the information he obtained as a confidential informant caused others to be injured or killed and, moreover, placed himself "in harms way."

Plaintiff initiated this action against numerous MDOC employees alleging violation of his Eighth Amendment rights. On April 15, 2011, the Honorable Janet T. Neff dismissed, for failure to state a claim on which relief may be granted, all of Plaintiff's claims, save for Plaintiff's claim against Defendant Sutherland concerning the allegation that Defendant Sutherland showed Plaintiff's picture

to McGowan.  (Dkt. #8).  As Judge Neff concluded, "[o]ther than his allegation that Sutherland jeopardized Plaintiff by showing McGowan Plaintiff's picture, Plaintiff makes no factual allegation that would support a conclusion that any Defendant acted or failed to act in a way that exposed Plaintiff to additional risk."  (Dkt. #8 at 7).  Defendant Sutherland now moves for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."  *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery."  *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial."  *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324).  While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the

material facts." *Amini*, 440 F.3d at 357.  The existence of a mere "scintilla of evidence" in support of

the non-moving party's position is insufficient.  *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir.

2005) (quoting *Anderson*, 477 U.S. at 252).  The non-moving party "may not rest upon [his] mere

allegations," but must instead present "significant probative evidence" establishing that "there is a

genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary

judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty

v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).  Rather, the non-moving party

"must be able to point to some facts which may or will entitle him to judgment, or refute the proof of

the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,'

and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54.  In

sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent

cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th

Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof  faces a "substantially

higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*,

270 F.3d 1036, 1056 (6th Cir. 2001).  "Where the moving party has the burden -- the plaintiff on a claim

for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to

hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United

States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the*

*Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The Sixth

Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains

evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury

would be free to disbelieve it."  *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL.,

MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).

Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate

when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v.

Cromartie*, 526 U.S. 541, 553 (1999).


## ANALYSIS

### I.  Exhaustion

Defendant Sutherland asserts that Plaintiff's claim must be dismissed because Plaintiff

has failed to properly exhaust such.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison

conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies.  *See Porter

v. Nussle*, 534 U.S. 516, 524 (2002).  Prisoners are no longer required to demonstrate exhaustion in their

complaints.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007).  Instead, failure to exhaust administrative

remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of

establishing.  *Id.*  With respect to what constitutes proper exhaustion, the Supreme Court has stated that

"the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's

deadlines and other critical procedural rules."  *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006).  In *Bock*,

the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,*544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the

deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance.  *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations").  Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a).  *See Spruill,* 372 F.3d at 232.

Michigan Department of Corrections Policy Directive 03.02.130 (effective July 9, 2007)[1] articulates the applicable grievance procedures for prisoners in MDOC custody.  Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue.  *Id.* at ¶ P.  If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶¶ P-Q.  The policy provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places, and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ R.  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶¶ W-X.

---

[1]  According to Plaintiff's compliant, the allegations concerning Defendant Sutherland occurred in 2010 and 2011.  Thus, this iteration of Policy Directive 03.02.130 applies.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by policy, e.g*.,* the regional health administrator for grievances concerning health care issues. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances. *Id.* at ¶ GG. The total grievance process from the filing of the Step I grievance to providing a response at Step III "shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II." *Id.* at ¶ S.

In support of his motion, Defendant has submitted an affidavit executed by Richard Russell, Manager of the Grievance Section of the Michigan Department of Corrections. (Dkt. #14, Exhibit B). Russell asserts that all Step III grievances are entered into a database maintained by the Grievance Section. Russell asserts that a search of this database reveals that Plaintiff has failed to pursue any grievance through all three steps of the grievance process. *Id.*

Plaintiff has submitted no evidence calling into doubt or challenging Russell's assertions. In fact, Plaintiff concedes that he did not file a grievance regarding his allegations against Defendant Sutherland. Plaintiff nevertheless argues that he has satisfied the exhaustion requirement because he

sought a declaratory ruling from the Director of the Michigan Department of Corrections pursuant to Mich. Comp. Laws § 24.263.[2]  The Court is unpersuaded by Plaintiff's argument.

While Plaintiff is correct that the procedure articulated in § 24.263 "is afforded by STATE STATUTE," such is hardly relevant.  The exhaustion requirement is designed to permit the appropriate state officials the first opportunity to resolve a dispute before legal action is initiated. However, Plaintiff is not permitted to select the state administrative process by which he attempts to resolve this matter before seeking relief in federal court.  As previously noted, the Supreme Court has held that proper exhaustion of administrative remedies is determined by reference to the relevant agency's rules and procedures.  Pursuant to MDOC policy, Plaintiff was required to resolve this matter through the grievance process.  Plaintiff concedes that he failed to do so.  The Court, therefore, finds that Plaintiff has failed to properly exhaust his claim against Defendant Sutherland.  Accordingly, the undersigned recommends that Plaintiff's claim against Defendant Sutherland be dismissed without prejudice for failure to exhaust administrative remedies.

## II.        Motion for Summary Judgment

Defendant Sutherland asserts, in the alternative, that he is entitled to summary judgment on the merits of Plaintiff's claim.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Claims such

---

[2] Section 24.263 authorizes "an agency to issue a declaratory ruling on the application of a statute to particular facts."  *See Priority Health v. Commissioner of Office of Financial and Insurance Services*, - - - N.W.2d - - -, 2011 WL 1884723 at *1 n.7 (Mich., May 17, 2011).

as this are analyzed pursuant to a two-step process.  Plaintiff must first demonstrate that he was "incarcerated under conditions posing a substantial risk of serious harm."  If the objective test is satisfied, Plaintiff must then establish that Defendant acted with a "sufficiently culpable state of mind."  In other words, was Defendant deliberately indifferent to his health or safety.  *Id.*

To prevail on his claim that Defendant failed to protect him or subjected him to harm, Plaintiff must establish that Defendant was deliberately indifferent to "a substantial risk of serious harm" to Plaintiff.  *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 828).  To establish that Defendant acted with deliberate indifference, Plaintiff must "present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'"  *Greene*, 361 F.3d at 294 (quoting *Farmer*, 511 U.S. at 829, 847).

Defendant Sutherland has submitted an affidavit in support of his motion for summary judgment.  (Dkt. #14, Exhibit C).  Defendant asserts that Plaintiff never contacted him concerning his actions or "agenda."  Defendant asserts that he was never informed by Plaintiff that there existed a "hit out on him."  Defendant further asserts that he neither spoke with Plaintiff nor showed Plaintiff's photograph to an inmate McGowen.  *Id.*

The only evidence that Plaintiff has submitted in opposition to Defendant's motion for summary judgment is a copy of what Plaintiff purports is a "prisoner pass."  (Dkt. #16, Exhibit B).  Plaintiff asserts that this prisoner pass was completed by "Regular Unit Officer Brown" and subsequently signed by Defendant Sutherland on November 8, 2010.  According to Plaintiff, this evidence establishes that Defendant Sutherland called Plaintiff to his office, as alleged in his complaint.

In the Court's estimation, the evidence submitted by Plaintiff establishes *at most* that Sutherland signed a prisoner pass apparently authorizing Plaintiff to proceed from one area of the facility to another and then return.  The fact that Sutherland may have signed a prisoner pass hardly establishes that Sutherland spoke with Plaintiff about anything, let alone the matters alleged in Plaintiff's complaint. Moreover, even if the Court assumes that Defendant signed a prisoner pass such in no way calls into question Defendant Sutherland's assertion that he never showed Plaintiff's photograph to inmate McGowan.  As Plaintiff's claim against Defendant Sutherland is based on the allegation that Sutherland jeopardized Plaintiff's safety by showing McGowan Plaintiff's photograph this unrefuted evidence is a sufficient basis to grant Defendant's motion for summary judgment.  While Plaintiff has had ample opportunity to marshal evidence to support the allegations in his complaint, he has failed to do so. Accordingly, the undersigned recommends that Defendant Sutherland's motion for summary judgment be granted.

## <u>CONCLUSION</u>

For the reasons articulated herein, the undersigned recommends that <u>Defendant Sutherland's Motion for Summary Judgment</u>, (dkt. #13), be **granted** and this action terminated.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  December 2, 2011                              /s/ Ellen S. Carmody
                                                             ELLEN S. CARMODY
                                                             United States Magistrate Judge